James J. Donohue v. Commissioner.
Donohue v. Commissioner
Docket No. 5664-63.
United States Tax Court
T.C. Memo 1966-149; 1966 Tax Ct. Memo LEXIS 135; 25 T.C.M. (CCH) 788; T.C.M. (RIA) 66149; June 27, 1966
Andrew F. Slaby, for the petitioner. Robert M. Burns, for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: The Commissioner has determined deficiencies in the petitioner's income tax and additions to tax for the years indicated as follows: *137 Addition
Addition
to tax
to tax
Sec. 6651(a)
Sec. 6653(a)
Year
Income tax
I.R.C. 1954
I.R.C. 1954
1959
$1,696.25
$339.25
$159.81
1960
7,235.41
361.77
As a result of concessions made by the parties, the issues for determination are: (1) whether the petitioner understated in his income tax returns for 1959 and 1960 his gross receipts from his trucking and dump operations for the respective years, (2) whether depreciation on trucking equipment used by petitioner in his business in 1959 and 1960 should be adjusted to reflect salvage value, (3) whether the cost of certain radios purchased by petitioner in 1959 and installed for use in his trucks constituted an ordinary and necessary business expense and was deductible by him for that year, (4) whether petitioner in his income tax returns for 1959 and 1960 overstated allowable deductions for various expenses including advertising expenses and sales, travel, and promotional expenses, (5) whether an amount incurred by petitioner in connection with a divorce proceeding to which he was a party and deducted by him in his income tax return for 1959 as a business expense for professional fees *138 constituted an allowable deduction, (6) whether real estate taxes for 1960 paid by petitioner constituted allowable deductions for ordinary and necessary business expenses, (7) what was the amount of taxable capital gains received by petitioner in 1960, (8) what was the amount of the net loss sustained by petitioner in 1960 in connection with his rental property in Belgium, Wisconsin, (9) whether petitioner is liable for an addition to tax for 1959 for delinquency under section 6651(a) of the Internal Revenue Code of 1954, and (10) whether petitioner is liable for additions to tax for 1959 and 1960 for negligence under section 6653 (a) of the 1954 Code. General Findings of Fact Some of the facts have been stipulated and are found accordingly. The petitioner, James J. Donohue, resides in Milwaukee, Wisconsin. He filed his Federal income tax returns for 1959 and 1960, prepared on the cash receipts and disbursements basis, with the director in Milwaukee, Wisconsin. An extension of time for filing the return for 1959 was requested and granted to June 30, 1960. The return, however, was filed on September 28, 1960. The notice of deficiency involved herein *139 was mailed to the petitioner on September 24, 1963, and the petitioner filed his petition on December 23, 1963. Thereafter, and on January 3, 1964, the petitioner filed amended Federal income tax returns for 1959 and 1960, prepared on the cash receipts and disbursements basis, with the director in Milwaukee, Wisconsin. In his original and amended income tax returns for 1959 the petitioner's occupation and his principal business activity were shown as "Trucking & Dump & Hotel Operator." In such returns for 1960 the petitioner's occupation and his principal business activity were shown as "Trucking & Dump Operator." There is no indication in the returns for those years that during such years the petitioner additionally engaged in any joint ventures with others or that petitioner's expenditures with respect to any venture were included in any deduction taken by him in his returns. Issue 1. Understatement of Gross Receipts from Trucking and Dump Operations Findings of Fact In his original income tax returns for 1959 and 1960 the petitioner reported gross receipts from his trucking and dump operations during those years in the amounts of $156,862.81 and $162,057.16, respectively. *140 In determining the deficiencies in issue, the respondent determined that petitioner's gross receipts from the foregoing operations amounted to $166,319.13 for 1959 and $173,271.71 for 1960. The petitioner's gross receipts from his trucking and dump operations were as follows for the years in issue: Source
1959
1960
Miscellaneous
$ 575.20
$ 443.83
Joseph Uihlein
120.00
American Partition Com-
pany
705.00
870.00
Joseph Schlitz Brewing
Company
54,117.00
52,857.70
A. O. Smith Corporation
110,801.93
119,100.18
Total
$166,319.13
$173,271.71
On December 22, 1958, the petitioner obtained from the Home Savings Bank, Milwaukee, Wisconsin, a loan in the amount of $6,000, which was represented by petitioner's promissory note bearing interest at the rate of 6 percent per annum and collateralized or secured by a non-notification assignment by petitioner to the bank of three accounts receivable in the total amount of $9,971 owing to petitioner by A. O. Smith Corporation, sometimes hereinafter referred to as Smith Corporation. The three accounts receivable were identified in the instrument of assignment as being accounts represented by petitioner's invoices *141 to Smith Corporation dated as follows and in the indicated amounts: Date of invoice
Amount of invoice
12/ 6/58
$3,326.77
12/13/58
3,650.51
12/20/58
2,993.72
Total
$9,971.00
The petitioner's loan of $6,000 from the Home Savings Bank was repaid by him as follows: (1) by a check issued to petitioner by Smith Corporation dated December 30, 1958, in the amount of $3,326.77 which was credited on January 5, 1959, to petitioner's account on the books of the bank, and (2) by a check issued to petitioner by Smith Corporation dated January 6, 1959, in the amount of $3,650.51, of which $2,673.23 was credited to petitioner's account on the books of the bank on January 6, 1959, and $14.44 of the amount of the check was credited to interest which was charged to petitioner's account on January 6, 1959. During 1958 and the years here involved, the Home Savings Bank was not engaged in the business of purchasing accounts receivable. Opinion In our findings on this issue we have concluded and found from the record as a whole bearing on this issue that petitioner's gross receipts from Smith Corporation during 1959 were $110,801.93. The petitioner's position, as we understand *142 it, is that such finding should be in the amount of only $104,801.93. Respecting the difference between the two amounts, $6,000, the petitioner contends that he was of the opinion that the transaction of December 22, 1958, between him and Home Savings Bank, wherein he assigned three accounts receivable, totaling $9,971, owing to him by Smith Corporation to the bank and received from the latter $6,000, was a sale of the accounts receivable, that accordingly he reported the $6,000 as income in 1958, the year in which he received it, as would a taxpayer reporting income on the cash basis, and that he had followed such method of reporting consistently throughout his business career. Except for petitioner's testimony that he was of the opinion that the transaction of December 22, 1958, between him and the bank was a sale, the foregoing contentions of petitioner are without evidentiary support in the record. Respecting petitioner's opinion that the transaction of December 22, 1958, between him and the bank was a sale wherein he sold the accounts receivable in issue, totaling $9,971, for $6,000, we have found that the transaction was in fact a loan to petitioner by the bank of $6,000 collateralized *143 or secured by a non-notification assignment to the bank of the $9,971 of accounts receivable. As shown by our findings the petitioner repaid the loan early in January 1959. The first payment was made with the full amount of a check dated December 30, 1958, issued to petitioner by Smith Corporation and not shown to have been received by petitioner during 1958. The second and final payment was made with a portion of a check dated January 6, 1959, also issued to petitioner by Smith Corporation. In view of what has been said above, we are without an evidentiary basis for concluding and finding that petitioner's gross receipts from Smith Corporation during 1959 were in any amount less than $110,801.93 as set out in our findings. The respondent is sustained as to this issue. Issue 2. Adjustment of Depreciation To Reflect Salvage Value Findings of Fact In his income tax returns for 1959 and 1960 the petitioner took deductions in the amounts of $9,927.92 and $11,131.93, respectively, for depreciation of assets used by him in his trucking and dump operations during those years. Such assets consisted of automobiles, tractors, trailers, and trucks. Each of the deductions was computed *144 by petitioner on the basis of 20 percent of cost, or a 5-year life, without assignment of any salvage value, except in a few instances depreciation was computed on the basis of 10 percent of cost, or a 10-year life, without assignment of any salvage value. In determining the deficiencies in issue the respondent determined that the deduction taken for each of the years for depreciation should be adjusted to reflect salvage value of the assets, which he determined to be 10 percent of their cost. Accordingly the responden determined that the deductions taken by petitioner for depreciation of the assets were allowable in the amount of $9,050.13 for 1959 and $8,646.91 for 1960. On or about October 10, 1960, the petitioner sold to Joseph Schlitz Brewing Company for $400 a 1951 Reo tractor. The tractor had an original cost to petitioner of $4,700, the full amount of which had been written off on petitioner's books by the end of 1956 by way of depreciation. Also, on or about October 10, 1960, the petitioner sold to Joseph Schlitz Brewing Company for $6,600 a 1958 Fruehauf semi-dump trailer which petitioner had acquired on July 23, 1958, at a cost of $6,200 and with respect to which petitioner *145 had computed and deducted depreciation thereon in the amount of $1,756.65 through December 31, 1959. Opinion The parties have agreed that the only question presented under this issue is the propriety of the respondent's determination that the computations of petitioner's allowances for depreciation for the years in issue are to reflect salvage value of the assets involved. Taking the position that since 1928 he has always computed depreciation on his trucks and similar equipment without regard to their salvage value and that such computation of depreciation has not heretofore been questioned or disturbed, the petitioner contends that respondent's determination of salvage value for 1959 and 1960 of 10 percent of cost of his trucks and similar equipment was arbitrary and capricious since salvage for such classes of his property seldom exceeded 5 percent of the cost thereof. Petitioner further contends that should the respondent be sustained in determining that salvage value of the assets in issue is to be considered in determining allowable depreciation thereon, then the salvage value should be determined in a negligible amount. In Massey Motors, Inc. v. United States, 364 U.S. 92 (1960), *146 involving automotive equipment, the Supreme Court held that a meaningful computation of the depreciation allowance requires an estimate of both the useful life of the depreciable asset and its salvage value at the end of such useful life; that the useful life of the asset must be "related to the period for which it may reasonably be expected to be employed in the taxpayer's business" and that "salvage value must include estimated resale or second-hand value" at the end of useful life in the taxpayer's business. In view of the foregoing it is obvious that consideration of salvage value is essential to the computation of a meaningful depreciation allowance. From the record it appears that since 1928 the petitioner has had considerable experience in the ownership and operation of depreciable assets of the type involved herein. Such experience as it related to the amounts realized from the disposition of such assets when they were no longer useful in petitioner's business is of primary importance here. Massey Motors, Inc. v. United States, supra; Engineers Limited Pipeline Co., 44 T.C. 226, 231 (1965). *147 However, the record only shows the experience of petitioner with respect to the 1951 Reo tractor and the Fruehauf trailer which were sold by him during October 1960. The tractor, which cost the petitioner $4,700 and the full amount thereof had been written off petitioner's books by the end of 1956 by way of depreciation, was sold for $400 or approximately 8 3/4 percent of its cost to the petitioner. The trailer, which cost the petitioner $6,200 in July 1958, which had an adjusted basis of approximately $4,445 on petitioner's books at the end of 1959, and after more than 2 years' use by petitioner, was sold for $6,600, or $400 in excess of its original cost. In our view the foregoing sales by the petitioner give support to the correctness of the respondent's determination of an overall salvage value for the petitioner's assets here in issue of 10 percent of their cost and negate the petitioner's contention that such determination was arbitrary and capricious. Since the petitioner's experience prior to the taxable years in issue as to the salvage value of his depreciable assets like or similar to those here in issue was peculiarly within the petitioner's knowledge and possession, we *148 are of the opinion that his failure to produce evidence with respect to such experience warrants application here of the rule in Wichita Terminal Elevator Co., 6 T.C. 1158, 1165 (1946), affd. 162 F. 2d 513 (C.A. 10, 1947), wherein it was said: The rule is well established that the failure of a party to introduce evidence within his possession and which, if true, would be favorable to him, gives rise to the presumption that if produced it would be unfavorable. * * * This is especially true where, as here, the party failing to produce the evidence has the burden of proof or the other party to the proceeding has established a prima facie case. * * *
Since the respondent's determination as to salvage value is presumptively correct and since the record bearing on the question supports his determination, we are without any basis for determining that the salvage values of petitioner's depreciable properties here in issue were negligible. The respondent is sustained as to his determination that the use of salvage values was proper here and as to his determination *149 of such values. Issue 3. Deductibility as an Ordinary and Necessary Business Expense of the Cost of Radios Purchased by Petitioner and Installed for Use in His Trucks Findings of Fact In 1959, Smith Corporation, for whom petitioner was rendering trucking service, requested petitioner to install mobile radios in the trucks used by him in rendering services to it and offered to pay him an additional 10 cents an hour per truck used by him in rendering service to it. Pursuant to such request and offer, the petitioner in 1959 installed in the trucks he used in rendering service to Smith Corporation certain mobile radios at a total cost of $2,685.37. Thereafter, during 1959 and 1960, Smith Corporation paid the petitioner the additional 10 cents an hour per truck as it had offered to do. In his income tax return for 1959, the petitioner deducted $16,176.63 for "Truck Operating Expense: Materials & Repairs." Included in the foregoing deduction was an amount of $2,685.37 which represented the cost of the above-mentioned mobile radios. In determining the deficiencies in issue, the respondent determined that the $2,685.37 represented a capital expenditure, disallowed the amount as a *150 deduction for an ordinary and necessary business expense for 1959, and allowed depreciation deductions for 1959 and 1960 with respect to the radios. The cost of the radios installed in petitioner's trucks constituted a capital expenditure by petitioner. Opinion Relying on certain of his testimony, the petitioner takes the position that the radios were installed in his trucks at the express directive of the Smith Corporation in which he acquiesced in order to retain his trucking business with that corporation; that although the radios performed when the trucks in which they were installed were operated on the highway, they did not perform when the trucks were used around Smith Corporation's plant; that accordingly the expenditure made for the radios represented wasted money and therefore was an ordinary and necessary business expense and was deductible as such by him in 1959. Whatever may have been the situation with respect to the performance of the radios when on the highway and their nonperformance when around Smith Corporation's plant, the fact remains that following the installation of the radios the petitioner thereafter, throughout 1959 and 1960, retained his trucking business *151 with Smith Corporation, which was in excess of $110,800 in 1959 and in excess of $119,100 in 1960, and in addition thereto, received from the corporation an additional payment of 10 cents an hour per truck. Since the benefits resulting to the petitioner from the installation of the radios extended throughout the remainder of 1959 and throughout 1960 and are not shown to have terminated at the end of 1960, or any subsequent date, we do not perceive any error in the respondent's disallowance of the cost of the radios as a deduction in 1959 as an ordinary and necessary business expense and allowing depreciation deductions for 1959 and 1960 on the radios. Issue 4. Overstatement by Petitioner of Various Expenses Including Advertising Expenses and Sales, Travel, and Promotional Expenses Findings of Fact The following is a statement, with respect to petitioner's trucking and dump operations, of the amounts deducted by petitioner in his income tax returns for 1959 and 1960 for the expenses indicated, the amounts disallowed and the amounts allowed by respondent for such expenses, and the amounts paid and deductible by petitioner as such expense: 1959
Interest
Payroll
Home Savings
Office
tax
Bank
Insurance
expense
Deducted in return
$3,158.22
$1,043.88
$4,520.80
$266.86
Disallowed by respondent
367.22
304.91
40.70
184.56
Allowed by respondent
2,791.00
738.97
4,480.10
82.30
Paid and deductible
2,791.00
741.97
4,480.10
82.30
1960
Deducted in return
$2,882.00
$ 467.49
$6,605.80
$112.00
Disallowed by respondent
145.65
none
40.78
100.00
Allowed by respondent
2,736.35
929.56
6,565.02
12.00
Paid and deductible
2,736.35
929.56
6,565.02
12.00
*152 In his income tax return for 1960 the petitioner deducted as an operating expense of his trucking and dump operations during that year the amount of $812.45 for advertising. The respondent in determining the deficiency for 1960 determined that petitioner had failed to establish that $755.90 of the deduction constituted an ordinary and necessary business expense or that the amount had been expended for the purpose designated and accordingly disallowed the $755.90 as a deduction. In his income tax returns for 1959 and 1960 the petitioner listed and deducted as part of the operating expenses of his trucking and dump operations during those years the amounts of $10,251.88 and $16,451.65, respectively, for sales, travel, and promotional expenses. In determining the deficiency for 1959, the respondent allowed $3,900 and disallowed $6,351.88 of the deduction taken for that year and in determining the deficiency for 1960, the respondent allowed $4,372.95 and disallowed $12,078.70 of the deduction taken for that year. Although the deductions taken were listed and taken by petitioner as part of the operating expenses of his trucking and dump operations for the years in issue, the petitioner *153 at the trial herein sought to establish the propriety of the deductions taken on the ground that during the years in issue he additionally engaged in certain ventures other than his trucking and dump operations and that in connection with such ventures, he paid sales, travel, and promotional expenses which constituted substantial, but unspecified, portions of the deductions taken for such expenses in his returns for the years in issue. Such ventures so advanced by petitioner are sometimes hereinafter referred to as: (1) venture with Eichenbaum, (2) the venture with Sampson, (3) New Mexico industrial revenue bonds venture, (4) the venture with Global Photogrammetric Service Company, and (5) the venture with Visitronics Corporation of America Projectron. Opinion We have set out in our findings the amounts which were paid by and were deductible by petitioner for payroll tax, interest, insurance, and office expenses with respect to his trucking and dump operations during 1959 and 1960, respectively. Such amounts will be allowed in a recomputation of the deficiencies here involved. In his income tax return for 1960 the petitioner deducted as an operating expense of his trucking and *154 dump operations during that year the amount of $812.45 for advertising. The respondent, determining that petitioner had failed to establish that $755.90 of the deduction constituted an ordinary and necessary business expense of petitioner or that the amount had been expended for the purpose designated, disallowed $755.90 of the deduction taken. The petitioner does not point us to anything in the record, nor do we find therein anything, to show that the amount disallowed constituted an ordinary and necessary business expense of the petitioner's trucking and dump operations during 1960, or that such amount was expended in that year in connection with any other business activity claimed by petitioner to have been engaged in by him during such year. Such being the situation, the respondent's action in disallowing the $755.90 must be sustained. In his income tax returns for 1959 and 1960 the petitioner listed and deducted as part of the operating expenses of his trucking and dump operations during those years the amounts of $10,251.88 and $16,451.65, respectively, for sales, travel, and promotional expenses. In determining the deficiency for 1959, the respondent disallowed $6,351.88 of *155 the deduction taken for that year and in determining the deficiency for 1960, disallowed $12,078.70 of the deduction taken for such year. The bases for the disallowances were the respondent's determinations that petitioner had failed to establish that an amount in excess of $3,900 for 1959 and an amount in excess of $4,372.95 for 1960 constituted ordinary and necessary business expenses for such years or were expended for the purposes designated. Although the foregoing deductions were listed and taken by petitioner as part of the operating expenses of his trucking and dump operations during the years in issue, the petitioner at the trial herein sought to establish the propriety of the deductions taken on the ground that during the years in issue he additionally engaged in certain ventures other than his trucking and dump operations (which ventures are listed in our findings), and that in connection with such ventures, he paid sales, travel, and promotional expenses which constituted substantial, but unspecified, portions of the deductions taken for such expenses in his returns for the years in issue. *156 It is now well established that deductions are a matter of legislative grace and that one who seeks a deduction must be able to point to a statute which provides for the allowance of the deduction and show that he comes within the terms of that statute. New Colonial Co. v. Helvering, 292 U.S. 435 (1934), affirming 24 B.T.A. 886 (1931); Deputy v. du Pont, 308 U.S. 488 (1940); Interstate Transit Lines v. Commissioner, 319 U.S. 590 (1943); McDonald v. Commissioner, 323 U.S. 57 (1944), affirming 1 T.C. 738 (1943); Hart v. Commissioner, 338 F. 2d 410 (C.A. 2, 1964), affirming 41 T.C. 131 (1963). The petitioner on brief points us to sections 162, 174, and 212 of the Code, [1] tells us that we have the burden of determining under which of those sections of the Code the sales, travel, and promotional expenses here in issue were deductible and admonishes us that courts cannot stifle business with too restrictive a view as to the deductibility of promotional expenditures incurred by embryonic enterprises in their formative stages or the expenses incurred in selling a new idea or innovation. *157 The respondent takes the position that the petitioner has failed to establish that he is entitled under any section of the Code to any deductions for sales, travel, and promotional expenses for the taxable years in issue in excess of the amounts allowed by respondent as set forth in the notice of deficiency. *158 Section 162(a) provides in general for the allowance as a deduction of all ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. Section 174(a)(1) provides in general that a taxpayer may treat any research or experimental expenditures paid or incurred by him during the taxable year in connection with his trade or business as expenses which are not chargeable to capital account and that the expenditures so treated shall be allowed as a deduction. Section 212(1) provides for the allowance in the case of an individual of all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income. In view of the foregoing and since the petitioner's returns were prepared on the cash receipts and disbursements basis, we think it is apparent that the allowances provided for in the respective specified sections as they relate to petitioner contemplate a specific sum or sums paid (1) in carrying on a trade or business of the petitioner, (2) for research or experimental expenditures connected with a trade or business of the petitioner, and (3) for the production or collection of income *159 by the petitioner. Since the petitioner does not point us to anything in the record that shows that the deductions in issue represented research or experimental expenditures connected with a trade or business of the petitioner, we conclude that section 174(a)(1) is without applicability here. Under section 7701(a)(2) of the Code, joint ventures are classified as partnerships and the member of a joint venture is classified as a partner. Partnerships as such are not subject to income tax but partners are liable to income tax in their separate or individual capacities. (Section 7701.) The general rule is well settled that business expenses of a partnership are not deductible by particular partners on their individual returns, except where there is an agreement among the partners that such expenses shall be borne by particular partners out of their own funds. Robert J. Wallendal, 31 T.C. 1249, 1252 (1959). Since by definition the term partnership includes a joint venture, the rule stated in the foregoing case is applicable in the case of joint ventures. The petitioner has not *160 furnished us copies of his agreements with other parties to the several ventures with respect to which he claims to have made payment of sales, travel, and promotional expenses comprising part of the deductions taken by him for such purposes and which are in issue herein. Nor has petitioner presented the testimony of any of the other parties to the several ventures respecting their agreements with the petitioner. No Federal income or loss returns are shown to have been filed by or for any of the ventures for either of the years in issue. Consequently, assuming but not deciding that the expenditures in question represent ordinary and necessary business expenses of the several ventures, we are unable to find that petitioner's agreements with the other parties to the several ventures provided that he bear out of his own funds the sales, travel, and promotional expenses, or any part thereof, of the several ventures. The petitioner appeared at the trial herein as a witness in his own behalf. There, after having placed in evidence approximately 100 canceled checks issued by him in 1959, ranging in amounts from $3.70 to $500 and totaling $10,027.31, or $224.57 less than the deduction of *161 $10,251.88 taken by him in his income tax return for 1959 for sales, travel, and promotional expenses, and after having placed in evidence more than 80 canceled checks issued by him in 1960, ranging in amounts from $2.40 to $3,000 and totaling $16,062.81, or $388.84 less than the deduction of $16,451.65 taken by him in his income tax return for 1960 for sales, travel, and promotional expenses, the petitioner did not identify nor did he attempt to identify any specific one of the foregoing checks or any specific group or groups of such checks as having been issued in payment of any sales, travel, and promotional expenses for or on account of either his trucking, dump, and hotel operations in 1959 or his trucking and dump operations in 1960, or any one of his several ventures in either of the years. Instead, on direct examination, the petitioner testified to the effect that he operated all of his businesses out of one bank account and that he was not "able to differentiate what cost was for what." Of the checks issued by petitioner in 1959 and totaling $10,027.31, 11 of them, ranging in amounts from $100 to $500 and totaling $4,900, were drawn payable to cash. Of the checks issued *162 by petitioner in 1960 and totaling $16,062.81, 9 of them, ranging in amounts from $500 to $1,000 and totaling $6,000, were drawn payable to cash. The one and only canceled check for $3,000 for either year was dated May 9, 1960. It was drawn by petitioner on Home Savings Bank, Milwaukee, Wisconsin, and was payable to the order of petitioner. Although this check does not bear the petitioner's endorsement, it does bear the following endorsement: Credited To Account Of The Within Named Payee The National Bank of Washington, D.C. Absence of Endorsement Guaranted The record is silent as to the type of account the petitioner maintained with the National Bank of Washington and also as to the ultimate disposition made by him of the $3,000 represented by the foregoing check. Since the record does not show otherwise, it may well be concluded that the check merely represented the transfer of funds from one bank to another by petitioner for his later personal use and was not for the payment of any expenditure of the petitioner involved herein. Inasmuch as petitioner is an experienced businessman and since all of the abovementioned checks issued by him in 1959 and 1960 were his personal checks, *163 we think it is significant that he testified with respect to the checks that he was not "able to differentiate what cost was for what." In view of the petitioner's conceded inability to identify the purposes for which the amounts here involved, namely, $10,251.88 for 1959 and $16,451.65 for 1960, were expended, and since the record herein otherwise is insufficient to enable us to do so, we are unable to find that petitioner was entitled to any greater deductions - whether for ordinary and necessary business expense under section 162(a) or whether for ordinary and necessary expense for the production and collection of income under section 212(1), or whether for both - than the amounts allowed by respondent in his determination of the deficiencies for such years. Accordingly, we hold for the respondent as to this issue. Issue 5. Professional Fees in Connection With Divorce Proceedings Findings of Fact In his income tax return for 1959 the petitioner listed and deducted as part of the operating expenses of his trucking and dump operations during the year the amount of $4,752.64 for professional fees. In determining the deficiency for 1959 the respondent allowed $4,304.64 of the *164 deduction, determined that petitioner had not established that the remainder of the deduction, $448, constituted an ordinary and necessary business expense, and accordingly disallowed that amount. In 1957 the petitioner's wife instituted against him a proceeding for divorce entitled Helen J. Donohue v. James J. Donohue and being case No. 237-862 in the Circuit Court of Milwaukee County, Wisconsin. The proceeding continued until some undisclosed date in November 1961 when the Circuit Court awarded a divorce to the petitioner. The $448 of professional fees disallowed by the respondent for 1959 was incurred by the petitioner in connection with the abovementioned divorce proceeding. Opinion Although taking the position on brief that the amount of $448 of professional fees in issue was incurred in connection with the divorce proceeding to which he was a party, the petitioner contends that the amount also was incurred by him in connection with "activities" designed to produce income and "specifically to preserve and protect his income-producing property in litigation." The petitioner concedes that expenses incident to divorce proceedings are basically personal and as such are not *165 deductible for income tax purposes but contends that it has been held that to the extent that a husband's legal expenses incurred in a divorce proceeding relate to the protection of his interest in income-producing property, such expenses are deductible. In support of the foregoing contention the petitioner cites and relies on Baer v. Commissioner, 196 F. 2d 646 (C.A. 8, 1952), reversing 16 T.C. 1418 (1951), and Bowers v. Commissioner, 243 F. 2d 904 (C.A. 6, 1957), reversing 25 T.C. 452 (1955). The respondent points to the following testimony of the petitioner given on direct examination, which is the only testimony given by petitioner respecting "the professional fees" or the portion thereof in issue here: By Mr. Slaby: Q. Mr. Donohue, regarding the professional fees, was this expense incurred in connection with activities designed to produce income? A. Yes, sir. The respondent contends that neither the foregoing testimony nor the record otherwise shows that the divorce proceeding arose in connection with petitioner's profitseeking activities, or provides any basis for the allocation of the amount in issue between personal *166 expenses and business expenses and that, in such a state of the record, the amount in issue should be held to constitute a nondeductible personal expense, citing the decisions in United States v. Gilmore, 372 U.S. 39 (1963), and United States v. Patrick, 372 U.S. 53 (1963). In Baer v. Commissioner, supra, the petitioner (husband) owned the controlling stock interest in a large downtown department store in St. Louis, Missouri, and served as its president at an annual salary of over $100,000. His wife's demands for lump-sum alimony threatened to break his control and thereby his position as president. In allowing petitioner's expenses in resisting her demands as deductions for the management, conservation, or maintenance of petitioner's property held for the production of income, the Court of Appeals stated that the controversy did not go to the question of petitioner's liability to his wife, but to the manner in which such liability might be met by him without greatly disturbing his financial structure. The Court further characterized the petitioner's stock as having a peculiar or special value to him. In Bowers v. Commissioner, supra, *167 the factual situation was similar to that in the Baer case in that the petitioner (husband) owned the controlling stock interest in United States Register Company and served as its president at a salary of about $50,000 a year. The Court of Appeals in the Bowers case followed the reasoning of the Court of Appeals in the Baer case and allowed the petitioner's expenses in resisting his wife's demands as deductions for the management, conservation, or maintenance of petitioner's property held for the production of income. United States v. Gilmore, supra, came before the Supreme Court on certiorari in the Court of Claims granted on the petition of the Government. Gilmore brought suit in the Court of Claims for refund of part of the income taxes paid by him for 1953 and 1954, on the ground that legal expenses incurred by him in defending divorce litigation with his former wife were deductible from his gross income as ordinary and necessary expenses incurred for the conservation of property held for the production of income. His gross income was derived almost entirely from his salary as president of three corporations which were franchised automobile dealers and from his *168 controlling stock in such corporations. His former wife had sued for divorce, alimony, and an alleged community property interest in such stock, and he alleged that had he not succeeded in defeating her claims, he might have lost his stock, his corporate position, and the dealer franchises, from which nearly all of his income was derived. The Court of Claims, relying on the above-mentioned decision of the Court of Appeals in the Baer case, among others, held that 80 percent of Gilmore's legal expenses were attributable to his defense against his former wife's community property claims respecting his stockholdings and, hence, were deductible as an expense incurred for the conservation of property held for the production of income. The Supreme Court, in footnote 3, took recognition of the fact that the taxable year 1953 was governed by the Code of 1939 and the taxable year 1954 was governed by the Code of 1954 and stated that since the relevant sections of the Codes were substantially identical, it would, for the sake of clarity, refer only to the 1939 Code. Respecting the Government's position before it, the Supreme Court said: The Government does not question the amount or formula *169 for the expense allocation made by the Court of Claims. Its sole contention here is that the court below misconceived the test governing § 23(a)(2) deductions, in that deductibility of these expenses turns, so it is argued, not upon the consequences to respondent [Gilmore] of a failure to defeat his wife's community property claims but upon the origin and nature of the claims themselves. So viewing Dixie Gilmore's claims, whether relating to the existence or division of community property, it is contended that the expense of resisting them must be deemed nondeductible "personal" or "family" expense under § 24(a)(1), not deductible expense under § 23(a)(2). For reasons given hereafter we think the Government's position is sound and that it must be sustained. In reversing the holding of the Court of Claims and in holding that none of Gilmore's legal expenses incurred in defending the divorce litigation with his former wife were deductible under section 23(a)(2) of the 1939 Code, the Supreme Court held that the origin and character of a claim with respect to which an expense was incurred, *170 rather than its potential consequences upon the fortunes of the taxpayer, is the controlling basic test of whether the expense was business or personal and, hence, whether or not it is deductible under section 23(a)(2). In so holding, the Court stated that it found the reasoning underlying the "consequences" view unpersuasive, mentioning the Court of Appeals' decision in the Baer case as the leading authority on that side of the question and, in footnote 18, listing the decision of the Court of Appeals in the Bowers case, among others, as being on the same side of the question as the Baer case. The Court further held that the wife's claims stemmed entirely from the marital relationship, and not, under any tenable view of things, from income-producing activity and that, therefore, none of Gilmore's expenditures in resisting the claims can be deemed business expenses deductible under section 23(a)(2). In footnote 19, the Court, citing certain cases and the pertinent portion of Treasury Department Regulations under the 1954 Code, stated that, "Expenses incurred in divorce litigation have generally been held to be nondeductible." In footnote 22, the Court stated that, "The marriage relationship *171 can hardly be deemed an incomeproducing activity." In United States v. Patrick, supra, Patrick sued in a United States District Court for refund of part of the income tax paid by him for 1956, contending that certain legal fees paid by him to his attorneys and those representing his wife in connection with a property settlement incidental to divorce proceedings instituted by his wife were deductible under section 212(2) of the Code of 1954 as ordinary and necessary expenses paid or incurred for the management, conservation, or maintenance of property held for the production of income. The District Court held for the taxpayer and that holding was affirmed by the Court of Appeals. Both courts relied on the opinion of the Court of Appeals in the Baer case and other cases following it, and found that the legal fees paid by Patrick were incurred not to resist a liability, but to arrange how it could be met without depriving him of income-producing property, the loss of which would have destroyed his capacity to earn income. The property settlement provisions, so the lower courts held, were designed to satisfy Patrick's marital obligations to his wife and to protect the interests *172 of their children, yet at the same time preserve Patrick's control over the publishing company to which he had devoted many years of effort. In reversing the holding of the Court of Appeals and in holding that none of the legal fees paid by Patrick were deductible, the Supreme Court held that the situation in the Patrick case was comparable to that in United States v. Gilmore, supra; that the principles held governing in the Gilmore case were equally applicable in the Patrick case; that it was evident that the claims asserted by Patrick's wife in the divorce action arose from Patrick's marital relationship with her and were the product of Patrick's personal or family life and not profit-seeking activity and that, as it had held in the Gilmore case, payments made for the purpose of discharging such claims are not deductible as "business" expenses. In both the Gilmore and the Patrick cases, the Supreme Court pointed out that since it had held that none of the legal expenses involved in the respective cases were deductible as "business" expenses, it was unnecessary to determine, as suggested by the Government, whether they were capital expenditures or personal expenses *173 since in either case they would not be deductible. The petitioner has not made any attempt to reconcile the holdings of the Courts of Appeals in the Baer and Bowers cases, upon which he relies, with the holding of the Supreme Court in the Gilmore and Patrick cases. Since the Supreme Court in the Gilmore case expressly stated that it found the reasoning underlying the decisions of the Court of Appeals in the Baer case and other cases to the same effect "unpersuasive" and in both the Gilmore and the Patrick cases held contrary to such reasoning, we think it is a fair conclusion that the cases relied on by petitioner no longer have force and effect and consequently are not controlling here. The record respecting the claims or demands made by petitioner's wife in the divorce proceeding is meager. However, the record shows that in his income tax returns for 1959 and 1960 petitioner took deductions in the amounts of $1,900 and $1,501.91, respectively, which were explained as "alimony payments made to Helen Donohue, wife, by order of Milwaukee County Circuit Court." Presumably, and in the absence of evidence to the contrary, she sought in the divorce proceeding not only a divorce from *174 the petitioner but also alimony. What other, if any, claims or demands she made in the proceeding are not disclosed by the record. Under the decisions of the Supreme Court in the Gilmore and Patrick cases, legal expenses incurred by a husband in resisting claims or demands asserted by a wife for a divorce and alimony in a divorce proceeding stem from the husband's marital relationship with her and not from any profit-seeking activity of the husband and consequently are not "business" expenses deductible under section 212 of the Code of 1954 for the management, conservation, or maintenance of property held for the production of income. Being unable to find from the record that the $448 in issue or any part thereof falls outside the ambit of the foregoing rule of the Supreme Court in the Gilmore and Patrick cases, we sustain the respondent's disallowance of the amount. Issue 6. Deductibility of Real Estate Taxes for 1960 as an Ordinary and Necessary Business Expense Findings of Fact In his income tax return for 1960 the petitioner listed and deducted as part of the operating expenses of his trucking and dump operations during the year the amount of $14,349.49 for taxes paid *175 on business and business property. No deduction for taxes was taken by petitioner in that part of his income tax return entitled "ITEMIZED DEDUCTIONS - IF YOU DO NOT USE TAX TABLE OR STANDARD DEDUCTION." In determining the deficiency for 1960 the respondent allowed $6,151.37 of the deduction taken and disallowed the remainder, $8,198.12, on the ground that the latter amount did not constitute an ordinary and necessary business expense. The respondent, however, further determined that petitioner was entitled to an itemized deduction for real estate taxes for the year in the amount of $2,727.79, and since the petitioner had failed to claim such itemized deduction in his income tax return for the year, the respondent decreased the petitioner's taxable income for the year by $2,727.79. Opinion In his petition the petitioner assigned error as to the respondent's disallowance of $8,198.12 of the deduction of $14,349.49 taken for taxes paid on business and business property. In his allegation of facts in support of the assignment of error, the petitioner admitted that the $14,349.49 was overstated by $4,118.30, which represented withheld income and F.I.C.A. taxes, that instead of the *176 deduction having been $14,349.49, it should have been $10,231.19, that substantiating data was available to support that amount as taxes on business property, and that the petitioner would submit evidence in refutation of the respondent's allowance only of $6,131.37 as ordinary and necessary business expense. In his answer the respondent denied both the petitioner's assignment of error and his allegation of facts. In an exhibit of petitioner in evidence herein, the petitioner admits that the aforementioned $10,231.19 is properly to be reduced by $1,352.03, or to $8,879.16 as the amount paid by him during 1960 as taxes on business and business property. As a result of the foregoing admission by petitioner, the remaining controversy between the parties is whether the amount of $2,727.79 allowed by respondent as an itemized deduction for real estate taxes paid in 1960 should have been allowed by him as a deduction for ordinary and necessary business expenses, as petitioner contends. The purpose of that portion of an individual income tax return entitled "ITEMIZED DEDUCTIONS - IF YOU DO NOT USE TAX TABLE OR STANDARD DEDUCTION" is for the reporting of deductions allowed by law but which *177 do not relate to the taxpayer's business operations as contrasted with his nonbusiness operations or personal affairs and purposes. Here, the respondent has determined that the $2,727.79 of the real estate taxes in issue were not ordinary and necessary business expenses, but that they were allowable as deductions relating to the petitioner's nonbusiness operations or personal affairs and purposes. The foregoing action of the respondent is presumed to be correct and the burden of showing that it was erroneous was on the petitioner. The record shows that during 1960 the petitioner owned six separate and distinct parcels of real estate, which are referred to in petitioner's testimony as the Port Washington, Wisconsin, property, the Belgium, Wisconsin, property, the property "on 33" in the town of Saulkville, the Silver Spring Road property, the Bonniwell Road property, and the Dean and Port Washington Road property. Neither by the pleadings, nor at the trial, nor on brief has petitioner attempted to show on which one or more of the foregoing parcels of real estate the above-mentioned $2,727.79 of real estate taxes was paid or the amount of such taxes that was paid as to any one of the *178 parcels. Since the record shows that the Port Washington property and the Belgium property were improved by buildings thereon and were leased by petitioner to tenants who paid cash rentals therefor and that the rents received from and the expenses, including taxes, paid with respect to such properties were reported in separate schedules of the petitioner's income tax return for 1960 and were so treated by respondent in his determinations of income from such properties, and since we are here concerned only with real estate taxes deducted by petitioner with respect to his trucking and dump operations, we think it may fairly be concluded that no portion of the $2,727.79 in issue was paid on petitioner's rental properties in Port Washington and Belgium. Respecting the Saukville property, the petitioner testified that he intermittently dumped on the property to keep the property active as a dump because if it lay dormant for a period of a year, the "grandfather rights on dumping" would terminate. As to the Silver Spring Road property, the petitioner testified that he was filling in a dump on that property; that he lost the Schlitz Brewing Company account for dumping; and that thereafter *179 he intermittently dumpted on the property one or two loads obtained from another customer for whom he performed trucking services. The petitioner testified that he bought, on a date not disclosed by the record, the Bonniwell property for development and was planning to fill in a low place on the property with fly ash but, after hauling in some fly ash, he lost his source of supply and had not been able to complete filling in the low place. Respecting the Dean and Port Washington Road property, the petitioner testified that it has been used as a dump on both sides of the road and is almost completely full and that only occasionally is anyone allowed to dump there. The petitioner further testified that he was trying to sell that property but did not indicate for how long or since when he has been trying to do so. On his income tax returns for 1959 and 1960 the petitioner showed his home address as 8310 North Port Washington Road, Milwaukee, Wisconsin. The record shows that at the time of the trial herein petitioner was residing at the foregoing address. In his income tax return for 1959 the petitioner took as an itemized deduction for taxes an amount of $190.97 which was explained *180 as "Real Estate Tax on home." From the foregoing it would appear that the deduction was taken for tax on real estate of petitioner used by him as his home which was situated at 8310 North Port Washington Road in Milwaukee. There is no showing in the petitioner's income tax returns for 1959 and 1960, or otherwise in the record, that the petitioner sold or otherwise disposed of any real property during either of those years. Since, as set out in our findings as to this issue, the petitioner did not take any itemized deduction in his income tax return for 1960 for taxes, the question arises as to whether the amount of $2,729.79 for real estate taxes here in issue included an amount representing real estate taxes paid by him on property used by petitioner as his home during 1960. Furthermore, the question arises as to whether the parcel of real estate situated at 8310 North Port Washington Road was the same parcel as that the petitioner referred to in his testimony as the Dean and Port Washington Road property. The record herein does not contain an answer to either of the foregoing questions. In view of the state of the record and particularly as to the isolated, intermittent, and occasional *181 use of the Saukville, Silver Spring Road, Bonniwell Road, and the Dean and Port Washington Road properties for dumping purposes, we are unable to find that those properties were used for such purposes with such frequency and regularity as to warrant the conclusion that the real estate taxes paid thereon in 1960 constituted ordinary and necessary business expenses for that year. Further, there is no showing that the real estate taxes in issue did not also include real estate taxes on property used by petitioner as his residence. Without specifying which one or more of the above-mentioned parcels of real estate were so used, the petitioner contends on brief that the property on which the real estate taxes in issue were paid also was used for parking or storage of his trucks and trucking equipment until vandalizing became so bad that he could not park his trucks and trucking equipment there any longer. The petitioner has not pointed us to anything in the record, nor have we found anything therein, to indicate where petitioner parked or stored his trucks and trucking equipment during 1960. Accordingly, for lack of evidence we are unable to find that the real estate taxes in issue or *182 any part thereof represented real estate taxes on property used by petitioner for parking or storage of his trucks and trucking equipment. The respondent is sustained as to this issue. Issue 7. Amount of Taxable Capital Gains Received by Petitioner in 1960 Findings of Fact In his income tax return for 1960 the petitioner reported and took a deduction there for a short-term capital loss of $464.72 on the sale of certain shares of corporate stock. On or about October 10, 1960, the petitioner sold to Joseph Schlitz Brewing Company a 1951 Reo tractor and a 1958 Fruehauf semi-dump trailer. The sales price of the tractor was $400 and that of the trailer was $6,600. The tractor had been acquired by petitioner on an undisclosed date prior to December 31, 1955, at a cost of $4,700, and by the end of 1956 the full amount of its cost had been written off on petitioner's books by way of depreciation. The trailer was acquired by petitioner on July 23, 1958, at a cost of $6,200. Depreciation deductions, totaling $2,996.65, were taken by petitioner in his income tax returns for the years 1958, 1959, and 1960 with respect to the trailer. In determining the deficiency for 1960 the respondent *183 determined that the petitioner realized a long-term capital gain of $2,421.37 from the sale of depreciable assets which the petitioner failed to report in his income tax return and that accordingly petitioner's taxable income was increased by $1,443.05 computed as follows: Long-term capital gain
$2,421.37
Less: Short-term capital loss per re-
turn
464.72
Net gain
$1,956.65
Less: Section 1202 deduction
978.32
Includable in taxable income
$ 978.33
As corrected
978.33
Loss per return
464.72
Net adjustment
$1,443.05
Opinion In his petition the petitioner assigned as error the respondent's determination that he had realized a long-term capital gain of $2,421.37 and that accordingly petitioner's taxable income was increased by $1,443.05. In his allegation of facts in support of the assignment of error, the petitioner alleged that substantiating data was available to refute respondent's determination that the sale of the trucking equipment resulted in a capital gain to petitioner, of which $978.33 was includable in taxable income, and further that in refutation of respondent's determination, the petitioner had available substantiating data to support the *184 short-term capital loss of $464.72 taken as a deduction in his income tax return. Whatever may have been the situation as to the availability of the substantiating data to refute the respondent's determination of petitioner's long-term capital gain and the portion thereof includable in the petitioner's taxable income as alleged by petitioner in his allegation of fact, we can only say that if such data was available to petitioner he has failed to present, or offer to present, it in the record herein. Instead, the petitioner relies on an exhibit of his contained in the record, wherein is set out a computation which petitioner states was made in accordance with his method of computing depreciation without consideration of salvage value and which purports to show that petitioner's gain on the sale of the tractor and the trailer was $3,486.62, that his net long-term capital gain was $3,021.90, and that one-half thereof, $1,510.95, was the net long-term capital gain includable in taxable income. In view of the foregoing it is apparent that the amount of $1,510.95 shown in the exhibit as the amount of petitioner's net long-term capital gain includable in taxable income is more than 50 percent *185 in excess of the $978.33 determined by respondent to be so includable. It is difficult to conclude that such a situation constitutes a refutation of the correctness of the respondent's determination of the lesser amount. At any rate, acceptance of the conclusion proposed by petitioner's computation would require a disregard of the infirmity in the method employed by him in computing depreciation, namely, without consideration of salvage value. This we are unable to do in view of our holding in Issue 2, supra, that consideration of salvage value in computing depreciation is essential to the computation of meaningful depreciation, the type of depreciation contemplated by the statute. Issue 8. Amount of Petitioner's Net Loss for 1960 Sustained on His Belgium, Wisconsin, Property Findings of Fact During 1959 and 1960 the petitioner owned a parcel of land situated in Belgium, Wisconsin, which was improved by a building thereon and which he rented for a cash rental. In his income tax return for 1960 he reported gross rent received from the abovementioned property in the amount of $4,500 and total operating expenses paid in connection with the property in the amount of $6,379.87 *186 and a net loss on the property of $1,879.87. In determining the deficiency for 1960 the respondent determined that the petitioner's gross rent from the property for the year was $5,500, that petitioner's total operating expenses for the year were $6,204.48, and the petitioner's net loss on the property for the year was $704.48. Opinion In his petition, the petitioner took the position that his net loss on the Belgium property for 1960 was $874.20 instead of the amount of $704.48 determined by the respondent, or a difference of $169.72. The petitioner does not attempt to explain the basis for the foregoing difference. However, an examination of the petitioner's amended income tax return for 1960 in connection with his original return for that year and the respondent's determination of petitioner's total operating expenses shows that, in the computation in the amended return of petitioner's total operating expenses, petitioner included miscellaneous expenses in the amount of $75.72 and promotion expense in the amount of $94, or a total of $169.72 which were not included by the respondent in his determination of petitioner's total operating expenses for the year. The respondent's *187 action in not including the above-mentioned amounts for miscellaneous expenses and promotion expense in his determination of petitioner's total operating expenses for the year is presumed to be correct, and since the petitioner has not submitted any evidence bearing on the question, we sustain the respondent's determination that the petitioner's net loss sustained in 1960 on the property in issue was $704.48. Issue 9. Liability of Petitioner for Addition to Tax for 1959 for Delinquency Under Section 6651 (a) of the Code of 1954. Findings of Fact During the pendency of the divorce proceeding instituted against petitioner by his wife in 1957 and which was terminated in November 1961, the petitioner's records pertaining to his finances and his ownership of property, by order of the Circuit Court of Milwaukee County, Wisconsin, were impounded in the chambers of the Court and the Milwaukee County Court House. Such impounded records were available to the petitioner or his agent under the supervision of the Court, or its bailiff, during the Court's normal working hours and were returned by the Court to the petitioner early in 1961. An extension of time for filing the petitioner's *188 income tax return for 1959 was requested and granted to June 30, 1960. However, the return was not filed until September 28, 1960. The petitioner's delinquency in filing his income tax return for 1959 was not due to reasonable cause but was due to willful neglect. Opinion The respondent has determined that since the petitioner's income tax return for 1959 was not filed until approximately 3 months after the expiration of the extension of time granted for filing, the petitioner is liable for an addition to tax for delinquency as provided in section 6651(a) of the Code. [2] By the provisions of that section, the addition to tax provided for therein is not applicable in case it is shown that the failure to file the required return was due to reasonable cause and not due to willful neglect. *189 The petitioner takes the position that since he has shown that his records pertaining to his finances and his ownership of property were impounded in the chambers of the Circuit Court of Milwaukee County and the Milwaukee County Court House, he has shown that his delinquency in filing his 1959 income tax return was due to reasonable cause and not due to willful neglect. In our opinion the conclusion thus drawn by petitioner is not warranted when considered in connection with the remainder of the facts. Granting that such of the petitioner's records as were impounded by the Court were not as readily available to him as if they had been held by him in his residence, the fact remains that they were available to him or his agent under the supervision of the Court or its bailiff during the Court's normal working hours. The petitioner has not shown, nor has he attempted to show just why, if he had made full use of such records which were available to him under the foregoing circumstances, he would not have been able to complete and file his income tax return for 1959 prior to June 30, 1960. Nor has petitioner shown why, if his return had not been completed and filed prior to June 30, 1960, a *190 further extension for filing was not requested. The petitioner as "a separate and further defense," in the event we deem proper the respondent's determination of the addition to tax for 1959 for delinquency, urges that by a check dated September 27, 1963 (3 days after the respondent's mailing to petitioner of the deficiency notice involved herein), he paid to the Internal Revenue Service the amount of the addition to tax for 1959 for delinquency and the amount of the addition to tax for 1959 for negligence both as determined by the respondent in the deficiency notice. In Taylor Securities, Inc., 40 B.T.A. 696 (1939), we had occasion to consider whether a taxpayer might render void a determination made by the Commissioner by action taken subsequent to the Commissioner's determination. There we said: The petitioner cites no provision of law or decision, nor are we aware of any, which authorizes a taxpayer, subsequent to the respondent's determination, to enter upon a course of conduct which will materialize into the happening of a fact or set of facts that will operate in and of themselves to nullify the respondent's determination. Such an authorization would reduce *191 the administration of the tax laws to mere idle activity. * * * In our opinion the foregoing statement is applicable and controlling as to the "separate and further defense" urged here by the petitioner. From our consideration of the record bearing on the question here involved, we have concluded and found as a fact that petitioner's delinquency in filing his income tax return for 1959 was not due to reasonable cause but was due to willful neglect. Issue 10. Liability of Petitioner for Additions to Tax for 1959 and 1960 for Negligence Under Section 6653(a) of the Code of 1954 Findings of Fact The petitioner's gross receipts from his trucking and dump operations were understated in his original income tax return for 1959 by the amount of $9,456.32 and in his original income tax return for 1960 by the amount of $11,214.55. The petitioner's gross rent from his Belgium, Wisconsin, property was understated in his original income tax return for 1959 by $1,000 and in his original income tax return for 1960 by $1,000. The petitioner's gross rent from his Port Washington property (Towne House) was understated in his original income tax return for 1959 by $750, and a deduction for *192 interest paid taken in his original income tax return for 1960 with respect to the same property was overstated by $3,040.17. A deduction of $14,349.49 taken in petitioner's original income tax return for 1960 for taxes paid on business and business property was overstated by $5,470.33. Part of the petitioner's underpayment of his income taxes for 1959 and 1960 was due to negligence. Opinion The respondent has determined that for 1959 and 1960 the petitioner was liable for the addition to tax imposed by section 6653 (a) of the Code of 1954. [3] We have set out in our findings only some of the understatements of income and overstatements of deductions involved in petitioner's original income tax returns for the years in issue. Various other understatements of income or overstatements of deductions in smaller amounts also were made in those returns of the petitioner. *193 The petitioner here, as in the preceding issue which involved delinquency, attempts to place the responsibility for the understatements of income and the overstatements of deductions for the years in issue upon the ground that some of his records were impounded in the chambers of the Circuit Court of Milwaukee County and the Milwaukee County Court House. We were not impressed with the attempt in the disposition of the preceding issue nor are we impressed by the attempt as to the instant issue. From our consideration of the record bearing on the question, we have concluded and found as a fact that part of the petitioner's underpayments of income tax for the years in issue was due to negligence. As a consequence we sustain the respondent's determination of additions to tax involved in the instant issue. Because of concessions of the parties as to the other issues involved Decision will be entered under Rule 50. Footnotes
1. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including - (1) a reasonable allowance for salaries or other compensation for personal services actually rendered; * * *
SEC. 174. RESEARCH AND EXPERIMENTAL EXPENDITURES. (a) Treatment as Expenses. - (1) In General. - A taxpayer may treat research or experimental expenditures which are paid or incurred by him during the taxable year in connection with his trade or business as expenses which are not chargeable to capital account. The expenditures so treated shall be allowed as a deduction. * * *
SEC. 212. EXPENSES FOR PRODUCTION OF INCOME. In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year - (1) for the production or collection of income; (2) for the management, conservation, or maintenance of property held for the production of income; * * *↩
2. SEC. 6651. FAILURE TO FILE TAX RETURN. (a) Addition to the Tax. - In case of failure to file any return required under authority of subchapter A of chapter 61 (other than part III thereof) * * * on the date prescribed therefor (determined with regard to any extension of time for filing), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate.↩
3. SEC. 6653. FAILURE TO PAY TAX. (a) Negligence or Intentional Disregard of Rules and Regulations With Respect to Income or Gift Taxes. - If any part of any underpayment (as defined in subsection (c)(1) of any tax imposed by subtitle A or by chapter 12 of subtitle B (relating to income taxes and gift taxes) is due to negligence or intentional disregard of rules and regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment.↩